UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA WARSHAW, o/b/o J.W.,[1] | ) ) ) | CASE NO. 1:08CV2803 |
| Plaintiff, | ) ) ) | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | ) ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

Angela Warshaw ("Plaintiff"), acting on behalf of J.W., a minor ("Claimant"), seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying Claimant's Supplemental Security Income ("SSI") claim. ECF Dkt. #1. Plaintiff asserts that the Administrate Law Judge ("ALJ") erred in: (1) relying upon the testimony of the medical expert, who used an erroneous definition of "extreme" limitation; and (2) refusing to grant controlling weight to the opinion of Claimant's treating physicians and failed to recognize that Claimant has marked deficits in two domains. ECF Dkt. #14. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case for further factfinding, analysis, and articulation by the ALJ:

**I.    PROCEDURAL HISTORY**

On September 1, 2004, Plaintiff, acting on behalf of Claimant, filed an application for SSI, alleging disability. Tr. at 48-50. Her application was denied initially and on reconsideration. *Id*. at 29-32; 37-37. Plaintiff filed a request for a hearing by an ALJ. *Id*. at 33.

On July 17, 2008, an ALJ conducted an administrative hearing, where Plaintiff was represented by counsel. Tr. at 386-408. At the hearing, Plaintiff and Claimant were represented by

---

[1]     *See* L.R. 8.1(a)(2).

counsel, and the ALJ received testimony from Claimant, Plaintiff, and medical expert Kathleen O'Brien, M.D. *Id*. On September 11, 2007, the ALJ issued a Notice of Decision - Unfavorable. Tr. at 10-21. On October 7, 2008, the Appeals Council denied Plaintiff's request for review. *Id*. at 5-7.

On November 29, 2008, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On May 9, 2009, Plaintiff filed a brief on the merits. ECF Dkt. #14. On August 24, 2009, Defendant filed a brief on the merits. ECF Dkt. #18. Plaintiff filed no reply.[2]

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ first found that Claimant had the severe impairment of Asperger's syndrome. Tr. at 16. The ALJ noted that progress notes from Claimant's primary care physician, Dr. Caine, indicate that he is a healthy child, but he was referred to a pediatric neurologist, Dr. Levinsohn due to concern over escalating personality changes since he entered kindergarten. *Id*. Claimant exhibited academic and social deficits and was bothered by loud noises and bright lights. *Id*. Dr. Levinsohn diagnosed Asperger's syndrome in September of 2004 and recommended speech and occupational therapy. *Id*. Claimant received special education support services at St. Ann School until fourth grade, when he was placed in the Julie Billiart School. *Id*.

The ALJ went on to conclude that Claimant did not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 16. The ALJ went on to determine Claimant's limitations in each of the functional domains. *Id*.

The ALJ stated "The degrees of functional limitations outlined below reflect the medical expert's testimony and opinions which she expressed during the hearing." Tr. at 17. The ALJ noted that Dr. O'Brien testified that Dr. Levinsohn's opinions resulted from "over-pathologizing." *Id*. The ALJ reasoned that the school records show that Claimant is doing well academically. *Id*. As far as self care is concerned, the ALJ noted that Claimant could be accommodated with strategies

---

[2] Plaintiff docketed a brief following Defendant's brief on the merits, but that brief is identical to Plaintiff's initial brief on the merits.

and plannings to minimize his difficulties. *Id.* The ALJ also noted: "Although the claimant has marked problems with social interactions, he is not completely incapable of social interaction as an extreme limitation in that functional domain would suggest." *Id.*

The ALJ went on to address each functional domain individually and made factual and legal findings regarding those domains. Tr. at 18-20. The ALJ's findings pertaining to "Interacting and Relating with Others" and "Caring for Yourself" are of particular relevance because Plaintiff challenges his findings in those domains.

Based upon the medical expert's testimony, the ALJ found that Claimant had marked limitations in "Interacting and Relating with Others." Tr. at 19. The ALJ concluded that this was Claimant's most debilitating domain. *Id.* The ALJ reasoned that Claimant's limitations were only marked because he receives counseling in and out of school and the record consistently indicates that he is polite, cooperative, and gets along well with adults and teachers. *Id.* However, the ALJ noted that Claimant has no close friends and his peer interactions usually result in frustration, angry outbursts and crying episodes and he misconstrues conversations as criticism. *Id.* Lastly, the ALJ noted that Claimant releases frustration at home before and after school. *Id.*

Again relying upon the medical expert's testimony, the ALJ found that Claimant had less than marked limitations in his ability to care for himself. Tr. at 20. He reasoned that Plaintiff testified that Claimant is bothered by self care tasks such as brushing his teeth, washing his hair, and clipping his toenails because he does not like to have his head touched. *Id.* He further reasoned that Claimant continues to be sensitive to loud noises and visual stimuli. *Id.* The ALJ noted that since Claimant has been in a school specifically devoted to special needs students, the faculty warns him ahead of time when there is going to be a fire drill. *Id.* Additionally, he develops a high level of anxiety when there are changes in his routine. *Id.* In conclusion, the ALJ noted that one of Claimants teachers has reported that he handles daily schedules and changes without frustration and the ALJ noted that Claimant's levels of anxiety are noted at times but he is able to cope with minimal support.

### III.   STEPS TO DETERMINING ELIGIBILITY FOR SOCIAL SECURITY BENEFITS FOR A CHILD

In order to receive SSI benefits, Plaintiff must show that he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and that is expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. An ALJ must proceed through the required sequential steps for evaluating entitlement to childhood disability insurance benefits. 20 C.F.R. § 416.924(a). The three-step procedure requires the ALJ to determine whether a child: (1) is performing substantial gainful activity; (2) has a "severe" impairment or combination of impairments; and (3) whether the impairment or combination of impairments are of listing-level severity in that the impairment(s) either meets, medically equals or are the functional equivalent in severity to a listed impairment. *Id.*

In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment. 20 C.F.R. § 416.925 (d)(emphasis added). In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment. 20 C.F.R. § 416.926(a)(emphasis added). In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a)(emphasis added). The SSA assesses all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. 20 C.F.R. § 416.926a(a)(1)- (3). Further, the SSA considers how a child functions in his activities within six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

**IV.     STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.     ANALYSIS**

    **A.     Whether the ALJ committed error by relying upon the testimony of the medical expert, who used an erroneous definition of "extreme" limitation**

Plaintiff first contends that the ALJ's finding that Claimant has less than extreme limitations in the functional domain of "interacting and relating with others" was not supported by substantial evidence. ECF Dkt. #14 at 15. Plaintiff argues that the ALJ's reliance on the medical expert's opinion was improper because the medical expert incorrectly defined "extreme limitations". *Id.*

The Court finds Plaintiff's arguments to have merit. A review of the record shows that the medical expert's definition of "extreme limitations" departed significantly from the statutory definition and that the ALJ relied on the medical expert's opinion, even restating the incorrect definition of "extreme limitations" in his disability determination.

Title 20, Section 416.926a(e)(3)(i) of the Code of Federal Regulations provides as follows:

> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate,

> sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. **However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.** It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

> The medical expert testified as follows:
>
> Q: Dr. Levinson [sic] saw the social interaction limitation as being at an extreme level. Is that a fair interpretation of this record?
>
> A: I think that that's over pathologizing. I don't think it's supported even by his own notes that it's extreme. If we look at how he interacted this morning, he has great difficulties [INAUDIBLE] and I think he probably has difficulties with adults, **but he's not completely incapable of interacting on a superficial level.** He interacted beautifully with the judge this morning so I can't give him extreme on that.

Tr. at 404 (emphasis added). The ALJ adopted Dr. O'Brien's opinion:

> In response to counsel's questions regarding Dr. Levinsohn's opinions at Exhibit 12 F, Dr. O'Brien testified that Dr. Levinsohn is over-pathologizing. . . Although the claimant has marked problems with social interactions, **he is not completely incapable of social interaction, as an extreme limitation in that functional domain would suggest.**

Tr. at 17 (emphasis added). The ALJ specifically noted that he based his conclusion regarding Claimant's limitations on the medical expert's opinion: "**Based upon medical expert testimony**, I find that the claimant has marked limitation in interacting and relating with others." *Id*. at 19 (emphasis modified). Following this conclusion, the ALJ went on to review some evidence of record, including evidence showing that Claimant: receives counseling in and out of school; is polite and cooperative and gets along well with others; has no close friends and his peer interactions usually result in frustration, angry outbursts, and crying episodes; and that he releases his frustration at home before and after school. *Id*.

Even given the ALJ's review of the evidence, the Court cannot conclude that his determination was supported by substantial evidence because he applied the incorrect legal standard. The ALJ both explicitly stated the incorrect definition of "extreme limitations" and implicitly endorsed the incorrect definition by adopting the opinion from Dr. O'Brien. It is not possible to

conclude that the ALJ would have made the same determination under a less stringent standard that did not require complete incapability of social interaction.

Defendant contends that the ALJ's determination was supported by substantial evidence, but Defendant's argument primarily constitutes an impermissible post-hoc analysis. Although Defendant may have been attempting to reconcile Dr. O'Brien's opinion with the medical evidence, the fact remains that Dr. O'Brien articulated her opinion under an incorrect standard, and the ALJ adopted that opinion and standard in his decision. The ALJ may have been entitled to rely upon Dr. O'Brien's analysis of the medical evidence, assuming that the ALJ adhered to the treating source rule; however, the ALJ was not justified in wholly adopting Dr. O'Brien's opinion when it was phrased in terms requiring more than the Social Security Regulations require.

Accordingly, the Court REVERSES the ALJ's decision regarding Claimant's ability to interact with others.

      **B.**    **Whether the ALJ erred in his assessment of Claimant's ability to care for himself**

Next, Plaintiff contends that the ALJ erred in failing to afford appropriate weight to treating and examining sources and, consequently, his determination relating to Claimant's ability to care for himself is not supported by substantial evidence. ECF Dkt. #14 at 17-25. Plaintiff points to opinions from: consulting examining physician, Dr. Halas; treating pediatric neurologist Dr. Levinsohn; treating psychological provider, Dr. Christopher; and occupational therapists, Williamson and Porter. *Id*. at 17.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that her treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Plaintiff first challenges the ALJ's treatment of Dr. Levinsohn's opinion. ECF Dkt. #14 at 19-20. Plaintiff contends that Dr. Levinsohn is a pediatric neurologist with a three year longitudinal history of treating Claimant. *Id*. at 20. Plaintiff further contends that Dr. Levinsohn performed the proper tests and assessments to support his diagnosis of Asperger's Syndrome and that he took the step of contacting the school to notify them that Claimant would need occupation, speech, and physical therapy. *Id*. Therefore, Plaintiff concludes that Dr. Levinsohn's opinion that Claimant had marked limitations in caring for himself should be entitled to great deference. *Id*. at 11, 20, 23.

-8-

Plaintiff also challenges the ALJ's rejection of consultative examiner Dr. Halas' opinion. ECF Dkt. #14 at 19. Plaintiff reasons that substantial evidence does not support the weight the ALJ's decision to afford greater weight to the medical expert's opinion. *Id*. Lastly, Plaintiff challenges the ALJ' rejection of Dr. Christopher's opinion due to a lack of factual basis. *Id*. at 22.

The Court finds that Plaintiff's position has merit for several reasons. First, the ALJ's reasons for giving deference to the medical expert's testimony are not supported by substantial evidence. Second, the ALJ misinterpreted the medical expert's testimony. And third, the ALJ failed to give proper independent consideration to treating sources' opinions.

Of note, Defendant does not challenge Plaintiff's assertion that Dr. Levinsohn and Dr. Christopher qualify as treating sources. ECF Dkt. #18 at 19-20. Therefore, the issue is whether the ALJ gave good reasons for discounting their opinions.

### i. The ALJ's reasons for deferring to Dr. O'Brien's testimony were not supported by the record

The ALJ stated that he "must give very substantial weight to the opinions of the medical expert, since she is a specialist, is familiar with the disability program, and has had the opportunity to review and evaluate the entire record, including both the written documentation and hearing testimony." Tr. at 17. The ALJ's justification lacks support in the record.

First, it is unclear why Dr. O'Brien's specialty in forensic psychology (Tr. at 401) renders her opinion to be more valid than opinions from Dr. Levinsohn, who is a pediatric neurologist, or Dr. Christopher, who is a child psychologist. Second, the ALJ stated that Dr. O'Brien had an opportunity to review the entire record, but later in his opinion states **"Attorney Margolius submitted an additional occupation therapy opinion post hearing**, in concert with a memo, arguing that the claimant has marked difficulties with self care skills because of his extreme sensitivity to noise, to bright lights, and to certain tactile sensations. . ." Tr. at 18 (emphasis added). Therefore, the medical expert did not review the entire record. Even so, any time a medical expert is consulted, he or she will most likely be the last physician to review the medical evidence. Although it may be valid to consider the fact that each medical doctor has reviewed different parts of the record, to hold that the medical expert's cumulative review of the record is alone sufficient

to outweigh a treating physician's opinion would practically eviscerate the treating source rule.

Lastly, Dr. O'Brien's familiarity with the disability program does not provide evidentiary support for the ALJ's conclusion affording her deference. As noted above, Dr. O'Brien relied upon a different definition of "extreme limitations" than the Social Security Regulations set forth. Whether her use of a different definition was in error or intentional, it undermines the ALJ's conclusion that her opinion is entitled to greater weight than opinions from treating sources due to her familiarity with the disability program. Specifically, with regard to the domain of caring for oneself, Dr. O'Brien never articulated what definition of "marked limitations" she was applying in determining that Claimant had less than marked limitations. *See* Tr. at 401- 409. This omission is of particular concern in light of her definition of "extreme limitations." Of further concern, "marked limitations" require that an impairment interferes seriously with a claimant's ability to **independently** initiate, sustain, or complete activities; however, in finding that Claimant had less than marked limitations, the medical expert relied heavily on her observation in the records that Claimant's condition was improved **with accommodations including preparing him in advance**. *See* Tr. at 402 (emphasis added). The domain of caring for oneself is characterized by a sense of independence and competence. 20 C.F.R. § 416.926a(k)(1)(i). This testimony indicates that the medical expert again used a definition different than the one set forth in the regulation. The Court will discuss this inconsistency in subsection iii, below.

While there is no assurance that Dr. O'Brien used the correct definition of "marked limitation," the questionnaires that Dr. Levinsohn and Dr. Christopher completed define "marked limitation" on the first page. Tr. at 228, 278. And that definition is consistent with the Regulations. *Compare id*. with 20 C.F.R. § 416.926a(e)(2)(i).

### ii. The ALJ misinterpreted Dr. O'Brien's testimony

The ALJ explicitly stated that he was relying on the medical expert's opinion in finding that Claimant had less than marked restrictions. Tr. at 20. The ALJ stated: "**In response to counsel's questions regarding Dr. Levinsohn's opinions at Exhibit 12 F**, Dr. O'Brien testified that Dr. Levinsohn is over-pathologizing." Tr. at 17 (emphasis added). The ALJ has misconstrued the record because when Dr. O'Brien stated that Dr. Levinsohn's opinions were the result of over

-10-

pathologizing, she was referring only to his opinion regarding one domain – interaction with others, but Exhibit 12 F sets forth Dr. Levinsohn's opinions regarding all six domains of functioning. *See* Tr. at 227-31. Dr. O'Brien testified as follows:

> Q: **Dr. Levinson [sic] saw the <u>social interaction limitation</u> as being at an extreme level. Is that a fair interpretation of this record?**
>
> A: **I think that that's over pathologizing.** I don't think it's supported even by his own notes that it's extreme. If we look at how he interacted this morning, he has great difficulties [INAUDIBLE] and I think he probably has difficulties with adults, but he's not completely incapable of interacting on a superficial level. He interacted beautifully with the judge this morning so I can't give him extreme on that.

Tr. at 404 (emphasis added). Therefore, when the ALJ stated that Dr. O'Brien viewed Dr. Levinsohn's opinions (*plural*) at Exhibit 12F as a result of over pathologizing, the ALJ misinterpreted Dr. O'Brien's testimony, which was limited to one opinion related to social interaction being at an extreme level.

The ALJ unequivocally stated that his determination regarding Claimant's abilities was based upon the medical expert's testimony: "**<u>Based upon the opinion of the medical expert</u>**<u>, I find that the claimant has less than marked limitation in the ability to care for himself.</u>" Tr. at 20 (bolded emphasis added). However, the medical expert never addressed any of the treating physicians' opinions regarding Claimant's limitations in this domain. Therefore, the ALJ did not even implicitly consider the treating physicians' opinions prior to deferring to Dr. O'Brien's opinion. Dr. O'Brien's testimony pertaining to Claimant's ability to care for himself is as follows:

> Q: Doctor, based on the evidence of record, can you provide me with your professional opinion of claimant's mental situation as of January 31, 2005 to the present, and give me you professional opinion as to whether the claimant meets, equals or functionally equals the [INAUDIBLE] period addressed in the various domains?
>
> A: . . . Caring for self is the one that was just being discussed. I see that as less than marked. He's an 11-year -old boy, so taking care of himself and wanting to do things like bathe and so forth, it's not too unusual. [sic].[3] But it also sounds as if it's fairly easy to accommodate those self care issues that are related to getting him to do what he needs to do. Mom describes that the accommodation is preparing him in advance for some of the changes and so

---

[3] The Court surmises that a word is missing from the foregoing sentence because Dr. O'Brien ultimately opined that Claimant's limitations were less than marked.

-11-

>> forth. So I would have to say I think that's less than marked. . .
>
> Q: Finally, doctor, under the caring for self section, the definition includes the child's ability to cope with stress and change in his or her environment.
>
> A: Right.
>
> Q: Is [Claimant's] ability to handle stress and change in the environment at less than the marked degree of impairment?
>
> A: The reason that I think that it isn't, again, I want to be clear, I think that it's possible that in the future these things will, that some [INAUDIBLE] it will move into marked. But the reason it's listed marked is that right now he can be accommodated fairly easily. [sic].[4] If that wasn't possible, that would probably push us over into that. But they have been able to find strategies, and mom has described some accommodations they can minimize some of that difficulty, some of the difficulties he has with coping. They also set for him, I think, very realistic goals that suggest that he can teach him some strategies and then they can employ some other accommodation. So I have to say, I still think it's less.

Tr. at 402, 405. Conspicuously absent from Dr. O'Brien's testimony is any discussion of the treating sources' opinions pertaining to Claimant's restrictions in the domain of caring for himself. Therefore, the ALJ's adoption of Dr. O'Brien's opinion is alone not sufficient to satisfy the treating source rule. In order to satisfy the treating source rule, the ALJ would have to directly address Claimant's treating sources' opinions and state good reasons for rejecting them. While the ALJ briefly addressed Dr. Levinsohn's and Dr. Christopher's opinions, his independent analysis does not satisfy the treating source rule for the reasons discussed below.

### iii. The ALJ failed to give proper independent consideration to treating sources' opinions

Although the ALJ briefly addressed Dr. Levinsohn's opinion, it is unclear what was the context. As noted above, the ALJ erroneously stated that Dr. O'Brien opined that all of Dr. Levinsohn's opinions resulted from over pathologizing. Tr. at 17. The ALJ then made this statement under the general heading "The claimant does not have an impairment or combination of impairment that functionally equals the listings" *Id*. The ALJ went on to state that the school records make it clear that claimant is doing well academically. *Id*. But, this has nothing to do with

---

[4] The Court surmises that a word is missing from the foregoing sentence because Dr. O'Brien ultimately opined that Claimant's limitations were less than marked.

caring for oneself. The ALJ went on to state that, as far as self care is concerned, Claimant can be accommodated with strategies and planning. *Id*. The ALJ did not discuss Dr. Levinsohn's opinion under the heading "Caring for Yourself." *See* Tr. at 19-20. Therefore, the Court concludes that the foregoing constitutes the extent of the ALJ's analysis regarding Dr. Levinson's opinion on the domain of "caring for yourself."

The ALJ briefly addressed Dr. Christopher's opinion, stating that it was made after only one month of contact and was not predicated upon a long psychiatric treatment history. Tr. at 18. The same would hold true of Dr. O'Brien; she had **no** treatment history. The ALJ then concluded that Dr. Christopher's opinion "is most likely based upon parental reports, and prompted by sympathy for the family and a desire to help." *Id*. The ALJ offered absolutely no factual support for this claim. It is entirely speculative and improper. The Court is not aware of any reason that Dr. Christopher would have offered his opinion on an improper sympathetic basis. The ALJ has done nothing to show that Dr. Christopher's opinion is not the result of medically accepted principles.

Given that the ALJ did not explicitly address deficiencies in Dr. Levinsohn's opinion (other than misinterpreting Dr. O'Brien's statement) and that he improperly rejected Dr. Christopher's opinion, the Court will proceed to consider whether the ALJ has adequately shown that evidence of record is inconsistent with the opinions of the treating sources in the domain of caring for himself.

As the Court demonstrates below, the ALJ did not demonstrate that the evidence of record was inconsistent with Dr. Levinsohn's opinion or Dr. Christopher's opinion. Therefore, his decision to reject the treating source opinions in favor of the medical expert requires reversal and the ALJ's finding that Claimant has less than a marked limitation also requires reversal.

The ALJ stated that Claimant has less than marked limitations in the domain of caring for himself because: (1) he can deal with stress with planning and accommodations; (2) one of his teachers, Mrs. Sasso, has reported that Claimant handles daily schedules and changes without frustrations; and elevated levels of anxiety are noted at times, but he is able to cope with minimal support. Tr. at 17, 20. The ALJ's decision is not supported by substantial evidence because: (1) there is no indication that he considered Claimant's ability to **independently** initiate, sustain, and complete activities; (2) he implicitly discredited Plaintiff's testimony without articulating a

-13-

sufficient reason; and (3) he did not give due consideration to the entire record.

First, there is no indication that he considered whether Claimant's impairments seriously interfere with his ability to **independently** initiate, sustain, and complete activities. He stated that "As far as self care is concerned, right now he can be accommodated with strategies, and with planning and accommodations those difficulties can be minimized." Tr. at 17. From the foregoing, it is unclear as to what difficulties the ALJ was referring, what accommodations are necessary, and who makes those accommodations. What is clear is that someone must assist Claimant with planning and accommodations; he therefore does not independently manage those difficulties. As noted above, the Social Security Regulations Require a finding that the claimant's "impairment(s) interferes seriously with [his or her] ability to **independently** initiate, sustain, or complete activities. [His or her] day-to-day functioning may be seriously limited when [his or her] impairment(s) limits only one activity or when the interactive and cumulative effects of [his or her] impairment(s) limit several activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added). Specifically with regard to school-age children, the Regulations provide that:

> School-age children (age 6 to attainment of age 12). You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. § 416.926a(k)(2)(iv).[5] There is no indication that the ALJ considered the effect of the need for accommodations and planning on Claimant's ability to function at an appropriate independent level for his age. Instead, the ALJ simply concluded that Claimant's limitations were less than marked because his "difficulties can be minimized" by accommodations and planning. That conclusion gives no consideration to independent functioning in a domain that "is characterized by a sense of independence and competence." Tr. at 17; *see also* 20 C.F.R. § 416.926a(k)(1)(i).

---

[5] This provision applies since Claimant was 11 years old at the time of the administrative hearing. Tr. at 391.

Aside from this analysis, the ALJ pointed to only two pieces of evidence that even arguably support a finding of less than minimal limitations.  The ALJ relied upon a note from Claimant's teacher, Mrs. Sasso, indicating that he is able to handle daily changes, and the ALJ relied upon another record purportedly indicating that Claimant is able to cope with anxiety with minimal support.  This does not constitute substantial evidence.

The Court notes that the ALJ's favorable treatment of Mrs. Sasso's statement highlights his erroneous treatment of Plaintiff's testimony.  The ALJ credited Plaintiff's testimony regarding Claimant's irritability concerning self-hygiene tasks. Tr. at 20.  In fact he specifically stated "I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and are credible. . ." *Id.* at 17.  However, he implicitly discredited Plaintiff's testimony regarding Claimant's need to be informed ahead of time of fire drills or assemblies due to anxiety.  *See* Tr. at 20, 400.  He instead relied upon a report from Mrs. Sasso that Claimant handles daily schedules and changes without frustrations. Tr. at 20.  The ALJ offered no explanation for implicitly rejecting Plaintiff's claim.[6]

The Court first notes that Plaintiff's testimony is not necessarily inconsistent with Mrs. Sasso's note.  Claimant could be able to handle schedule changes without frustration as Mrs. Sasso said, and he could also require support from school faculty as Plaintiff said.   Mrs. Sasso's note is silent on the issue of independent functioning: "[Claimant] handles daily schedules + changes without frustration." Tr. at 307.  This statement does not indicate what accommodations, if any need to be made for Claimant, and it does not state that he can independently handle schedule changes.  Further, Mrs. Sasso's note was dated January 29, 2008, and Plaintiff testified on July 17, 2008.  *Id.* at 307, 386.  The ALJ made no inquiry into whether Claimant's condition had changed in the interim.  Therefore, even if Mrs. Sasso's note and Plaintiff's testimony were inconsistent, Plaintiff's testimony was more recent and the ALJ should have developed the record prior to discounting Plaintiff's claim that Claimant requires advanced notice of changes in the daily schedule.

---

[6] To the extent that he accepted Plaintiff's claim, he failed to analyze the effect of the need to notify Claimant in advance of fire drills and class assemblies on Claimant's ability to function independently, as stated in the preceding paragraph.  *See* 20 C.F.R. § 416.926a(e)(2)(i).

The ALJ next states "Elevated levels of anxiety are notes at times, but he is able to cope, **with minimal support** (Exhibit 16 F, Page 25)." Tr. at 20 (emphasis added). The ALJ's statement, in support of a finding of less than marked restrictions, does not comport with Social Security Regulations because the ALJ acknowledges that Claimant is not able to independently cope with anxiety. There is no indication that the ALJ considered whether Claimant's impairments seriously interfere with his ability to **independently** cope with anxiety.

Additionally, due to incomplete and inconsistent numbering of the administrative record, the Court is not certain of the location of the document to which he has referred to by citing Exhibit 16 F page 25. To that end, the Court further notes that Defendant was able to provide a pinpoint citation for the portion of the ALJ's sentence referencing Mrs. Sasso's statement, but Defendant did not endeavor to provide a pinpoint citation to the record concerning Exhibit 16 F page 25. *See* ECF Dkt. #18 at 19. In order to identify the document that the ALJ referenced, the Court must carefully examine the page numbers that were affixed at the administrative level. Page 287 of the transcript was labeled as Exhibit 16 F, Page 1 of 54, but then pages 288-298 are simply labeled "Page __ of 11," with respective page numbers inserted in the blank space. Pages 299- 331 are labeled 1-31, respectively. Pages 332-337 are not otherwise numbered. Page 338 is numbered as page 52, Page 339 is not numbered, and Page 340 is numbered as page 54. Nothing is labeled as 16F, Page 25. Given the foregoing, the Court surmises that transcript page 323 is of Exhibit 16 F page 25 because it is labeled "25" and it is located between Exhibit 16 F, Page 1 of 54 and the document labeled "54." The document located at page 323 says nothing about Claimant's purported ability to cope with anxiety. *See* Tr. at 323. The Court sees no obligation to wade through the entire record searching for support for the ALJ's conclusion, on the chance that the ALJ has provided an improper citation.      Lastly, the ALJ has not given due consideration to the entire record. Plaintiff contends that, once Claimant was transferred to a school for children with special needs, he began to improve in functioning, but only with extensive accommodation. ECF Dkt. #14 at 20. While the ALJ acknowledged that Claimant was attending a school for students with special needs, the ALJ simply failed to consider that Claimant requires additional support and accommodations from others, even while attending a school for children with special needs. Considering the record as a whole,

-16-

particularly the fact that Claimant requires additional support in a school for children with special needs, it cannot be said that the ALJ has articulated evidence that a reasonable mind would accept as adequate to support a finding that Claimant's impairment does not interfere seriously with his ability to independently initiate, sustain, or complete activities.

For the foregoing reasons, the Court concludes that the ALJ inappropriately afforded more weight to the medical expert than Dr. Levinsohn, Dr. Christopher, or Dr. Halas. Accordingly, the ALJ's determination that Claimant had less than marked limitations in the ability to care for himself is not supported by substantial evidence.

## VI. CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ's decision regarding Claimant's limitations in the domains of "interacting and relating with others" and "caring for yourself." The Court REMANDS the instant matter for further factfinding, analysis, and articulation by the ALJ in accordance with this order.

IT IS SO ORDERED.

DATE: January 19, 2010  /s/*George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE